UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:**   IN CHAMBERS ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION [52]

### I.    Introduction

This case was filed in early 2016 and has now reached summary judgment. The individual Plaintiffs are scheduled for trials that span from November 2017 and into December 2017. DirecTV has claimed for years that the Installers it hires through Contracting Companies are independent contractors, not employees. The Installers claim that they are employees as a matter of law, and are eligible for various California and Fair Labor Standards Act statutory protections. Both parties ask this Court to determine the Installers' status as a matter of law.

The Court finds that the Installers are DirecTV's employees under both FLSA and California Law, and that DirecTV cannot claim a 207(i) exemption based on the facts. The Court also finds that, under the facts provided, only three of the nine Installers have a separate claim for minimum wage violations under FLSA. None of the Installers have a viable gap time claim.[1] The Court determines that the statute of limitations for this case is two years, not three, as DirecTV's FLSA violation is not willful. And the Court provides guidance regarding how to calculate overtime wages, although the final calculation remains a question for the fact-finder.

---

[1] The Motions do not directly address some of the other remaining FLSA claims, such as: overtime pay, accurate record-keeping, improper deduction claims, statutory damages, and more. Those claims are for the fact-finder to decide.

Initials of Preparer     :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

In coming to this decision, the Court recognizes the risks that corporations face when hiring a subcontractor. Corporations like DirecTV should—and do—have the right to contract with subcontractors and set parameters to ensure efficiency and quality. And corporations should be able to do so without having to qualify as a joint-employer. But here, DirecTV has gone well beyond setting parameters for efficiency and quality. In asking this Court to find that the Installers are independent contractors and not employees, DirecTV asks this Court to prioritize form over substance. DirecTV asks this Court to consider DirecTV's legal arrangements with various Contracting Companies, but to essentially ignore the actual work environment for the Installers working at those Contracting Companies.

For a jury to find for DirecTV, it would have to conclude that the Installers were not employees under either FLSA or California law. To reach this conclusion, the jury would have to ignore the substantial control DirecTV exerted over the Installers. The jury would have to ignore the hiring guidelines DirecTV established, guidelines that far exceeded any guidelines provided by the Contracting Companies. The jury would have to ignore how DirecTV was the only customer for many of these Contracting Companies, effectively setting the rate of payment for each Installer. And they would have to ignore the Contractor Agreement, which stated that the Contracting Companies were not allowed to work for other cable or television installation companies.

DirecTV asks this Court to believe that these Contracting Companies were not shell corporations. But even if the Court does believe that, the Court can still draw only one conclusion. DirecTV's influence over the Contracting Companies, its ability to hire and *de facto* fire Installers, its ability to schedule shifts and supervise Installers, and its control over even minute aspects of the Installers' work environment all show an employer-employee relationship. And DirecTV cannot show a genuine dispute over any material fact that would demonstrate otherwise.

### II.    Factual Background

DirecTV provides subscription direct broadcast satellite television service to customers nationwide. A DirecTV subscription requires the installation and activation of the DirecTV satellite dish, affixed to the customer's home or office, and a DirecTV box, connected to the television. Plaintiff's Statement of Uncontroverted Facts ("PSUF") ¶ 7. In some locations, DirecTV provides DirecTV "owned and operated" installation services. PSUF ¶ 11. In other locations, it sub-contracts all

Initials of Preparer                    :

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|----------|----------------------|------|------------------|
| Title | David Varas v. Directv, LLC | | |

installation work to various contracting companies ("Contracting Companies"). PSUF ¶ 14. These Contracting Companies and DirecTV contract through a Service Provider Agreement ("SPA"). PSUF ¶ 21. The Contracting Companies then engage and train installer-technicians ("Installers") to render installation services for DirecTV.

The Installers have brought this case alleging that DirecTV violated the FLSA by repeatedly paying employees less than the federal minimum wage; failing to pay employees who worked in excess of 40 hours per week at a rate of one-and-a-half times the regular rate at which they were employed; and failing to keep and preserve accurate records of employees and the wages, hours, and other conditions of employment maintained by them since 2010. Plaintiffs allege that DirecTV is a joint employer of the Contracting Companies and is therefore liable under the FLSA. Plaintiffs allege that DirecTV also misclassified the Installers under California wage and employment laws. Plaintiff seek to recover unpaid minimum wage and overtime compensation and liquidated damages. *Id.*

### III.    Legal Standard

Summary judgment is proper where, viewing the evidence and inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Material facts are those that may affect the outcome of the suit under governing law, and an issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Here the Court considers cross-motions for summary judgment, for which the Ninth Circuit has refined the standard of review. "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Wash.*, 783 F.3d 1151, 1156 (9th Cir. 2015). The Court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Id.*

### IV.    Under the Fair Labor Standards Act, Installers Worked As Employees of DirecTV, Not as Independent Contractors

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

### a. FLSA Joint Employment Test

The FLSA broadly defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In the Ninth Circuit, "the concept of joint employment should be defined expansively under the FLSA." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003) (quoting *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997)). An employee may work for two employers simultaneously. 29 C.F.R. § 791.2(a). Joint employment may be found where the facts show "that employment by one employer is not completely disassociated from employment by the other employer(s)." *Id*. The scope of work for the employee of joint employers is considered "one employment," and the employers are considered "responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions. . . ." *Id*.

In the Ninth Circuit, joint employment is analyzed under the "economic reality" test. *Chao*, 346 F.3d at 917. "[D]etermination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity.'" *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L. Ed. 1772 (1947)). The determination is a question of law whereby "[t]he touchstone is 'economic reality.'" *Id*. (quoting *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961)).

There are three situations in which a Court may find that a joint employment relationship exists:

(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

:

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|----------|----------------------|------|------------------|
| Title | David Varas v. Directv, LLC | | |

29 C.F.R. § 791.2(b). Both situations two and three apply to this case.

Because Plaintiffs argue that these situations do exist, the Court must look at the economic-reality test in *Bonette.* This four-factor test is not limited to, but primarily considers, whether the alleged employer:

(1) had the power to hire and fire the employees;

(2) supervised and controlled employee work schedules or conditions of employment;

(3) determined the rate and method of payment; and

(4) maintained employment records.

*Bonnette*, 704 F.2d at 1470.

Courts in the Ninth Circuit also look at additional factors depending on the potential joint employers. In *Torres-Lopez v. May*, 111 F.3d 633 (9th Cir. 1997), the Ninth Circuit held that, for the purposes of FLSA, a farm owner was the joint employer of farm workers hired by a third-party labor contracting company. *Torres-Lopez*, 111 F.3d at 637. In reaching that conclusion, the Court expanded upon *Bonnette*'s four-factor economic reality test. *Id.* at 640. The Ninth Circuit found these eight "non-regulatory" factors when a vertical joint employment relationship exists, meaning that one company controls another company that hires the workers in question.

Where, as here, "a company has contracted for workers who are directly employed by an intermediary company," the *Torres-Lopez* economic-reality test also applies. *Chao*, 346 F.3d at 917 (calling this type of relationship a vertical joint-employment relationship). Under the *Torres-Lopez* economic reality test, the Court considers the following non-regulatory factors:

(1) whether the work was a specialty job on the production line;

(2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes;

Initials of Preparer                              :

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

(3) whether the premises and equipment of the employer are used for the work;

(4) whether the employees had a business organization that could or did shift as a unit from one worksite to another;

(5) whether the work was "piece work" and not work that required initiative, judgment or foresight;

(6) whether the employee had an opportunity for profit or loss depending upon the alleged employee's managerial skill;

(7) whether there was permanence in the working relationship; and,

(8) whether the service rendered is an integral part of the alleged employer's business.

*Torres-Lopez*, 111 F.3d at 640.

Because neither list of economic reality test factors is exhaustive, the Court considers all factors relevant to the particular situation in evaluating the economic reality of an alleged joint employment relationship under the FLSA. *Torres-Lopez*, 111 F.3d at 639 (quoting *Bonnette*, 704 F.2d at 1470).

In a typical independent contractor case, it is undisputed that the plaintiff provides services to the defendant; the only issue that remains is whether the workers were independent contractors. This is not a typical case. Here, the DirecTV hired Contracting Companies, who in turn hired the Installers. Under the formal understanding of this set-up, the Installers provided a service to the Contracting Companies, who then provided that service to DirecTV. DirecTV claims that the principal question is whether DirecTV, as opposed to just the Contracting Companies, is a joint employer of these Installers. DirecTV claims that the Plaintiffs retain the burden of proving by a preponderance of the evidence that DirecTV was a joint employer. *Rios*, 2006 WL 2067847, at *2 (N.D.Cal. 2006). Other Courts have also held that Plaintiffs bear the burden of proving that they were employees covered under FLSA. *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999) ("Those seeking compensation under the Act bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act."). While the burden under California law may be

|  | : |
|---|---|
| Initials of Preparer | |
|  | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

different,[2] the burden under FLSA is on the Plaintiffs.

As a preliminary matter, similar to the court in *Perez v. Lantern* Light, the Court notes that the Contracting Companies' reliance on revenue from DirecTV is a significant consideration when analyzing the economic-reality factors.[3] An evaluation of a company's power over an employment relationship must take into account its control over the purse strings, "[r]egardless of whether [it is] viewed as having had the power to hire and fire." *Bonnette*, 704 F.2d at 1470. The Contracting Companies at issue here generally served DirecTV exclusively, a fact that DirecTV does not dispute. PSUF ¶ 93. DirecTV paid the Contracting Companies over millions of dollars a year. PSUF ¶ 95 (*citing* Ex. 107 ("DIRECTV payments to Christian Installation Group have been over $2.8 million every year since 2010, and over $5.6 million in 2015"); Ex. 108 ("DIRECTV payments to Empire Communications were more than $1.9 million every year since 2010, reaching over $4 million in 2015"); Ex. 109 ("DIRECTV payments to Satek Communications was over $1 million every year from 2009-2012")). While this sort of control is not dispositive alone, it influences the analysis of each factor below; it helps the Court consider the substance of the relationship instead of focusing on its form.

The Court first analyzes the four regulatory *Bonnette* factors.

b. **Regulatory Factors**

i. ***The Power to Hire and Fire Installers***

---

[2] Under California law, the independent-contractor test and the joint-employment test are tests attacking the employment relationship. And "the burden of proof is on the party attacking the employment relationship," *Bemis v. People*, 109 Cal. App. 2d 253 (Cal. Dist. Ct. App. 1952); *Robinson v. George*, 16 Cal. 2d 238 (Cal. 1940); *Faigin v. Signature Grp. Holdings*, Inc., 211 Cal. App. 4th 726 n.4 (Ct. App. 2012); *Lujan v. Minagar*, 124 Cal. App. 4th 1040, 21 Cal. Rptr. 3d 861, 868 (Ct. App. 2004). This Court holds that DirecTV bears the burden of disproving the employment relationship.

[3] DirecTV claims that *Perez v. Lantern Light Corp.*, 2015 WL 3451268 (W.D. Wash. May 29, 2015), finding DirecTV to be a joint employer, is clearly distinguishable. DirecTV argues that *Perez* is different because the *Perez* plaintiffs were employees of the Contracting Company, not independent contractors. Contrary to DirecTV's assertions, the analysis in *Perez* does not seem heavily influenced by this fact. More importantly, DirecTV concedes that the SPA in *Perez* is materially the same as the one here. PSUF ¶¶ 22-25. DirecTV also claims that *Perez* is a departure from the prevailing view that installation technicians are not jointly-employed by the company whose equipment they install. The cases that DirecTV cites for the prevailing view are distinctly different from the case before the Court. As the analysis in the next two sections will show, DirecTV had for more control and supervision over the Installers than the cases DirecTV asks this Court to consider. Also, DirecTV subjected its employee installation-technicians to the same standards as the Installers in this case.

Initials of Preparer _____  : _____

PMC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

The Court first examines whether Plaintiffs have provided indisputable evidence that DirecTV had "[t]he right, *directly or indirectly*, to hire, fire, or modify the employment conditions of the workers." *Torres-Lopez*, 111 F.3d at 640 (emphasis added); *see also* 29 U.S.C. § 203(d) and (g). Indirect control as well as direct control can demonstrate a joint employment relationship. *Id*. at 643 (*citing* 29 C.F.R. § 500.20(h)(4)(ii)). The Court cannot mechanically ascribe the power to hire and fire to a direct employer, such as the Contracting Companies. The Court must separately consider DirecTV's role in hiring and firing.

DirecTV argues that the Contracting Companies themselves had the authority to hire and fire the installers. There is no evidence that DirecTV specifically requested or directed the Contracting Companies to hire or fire any potential candidate or employee; however, that does not mean DirecTV did not influence hiring and firing decisions. PSUF ¶ 33. Even when the Court considers these facts, no genuine dispute of material fact exists disputing that DirecTV does play an important role hiring and firing Installers.

DirecTV established and enforced hiring guidelines for Installers.[4]  DirecTV required that potential hires pass prerequisite background checks, including drug screens, criminal history, social security and motor vehicle record checks. PSUF ¶ 27-34, 97-98.[5]  An applicant would not be eligible for employment before passing the required screenings. PSUF ¶ 27-28. DirecTV claims that it did not have contact with any of the Installers in enforcing these requirements; however, the Agreement between the Contracting Companies and DirecTV mandated that these guidelines apply to any Installers working on DirecTV-related orders. PSUF ¶ 26. There is no dispute about the text of this agreement.

DirecTV also required that only approved vendors conduct the screenings. PSUF ¶ 29. Even though DirecTV had no contact with the interviewees, the Contracting Companies provided the results of each screening to DirecTV before DirecTV issued a Tech ID. PSUF ¶ 29-30. The Tech ID number is

---

[4]  DirecTV claims that these measures are simply quality control measures; however, the Court holds that argument to be incorrect *infra* in Section IV.b.ii below (page 10).
[5]  DirecTV required that all Contracting Companies follow these guidelines in hiring. DirecTV supervised this process by requiring each company to provide the requisite information before adding the Installer to any work order. While DirecTV claims that it did not require this of any specific Installer but only of the Contracting Companies, that argument does not create a material dispute. These requirements affected each Installer individually and the Contracting Companies were contractually bound by the agreement.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

necessary for Installers to access the DirecTV work assignment system. PSUF ¶ 32. Without access, the Installer could not work on DirecTV orders, the installer had to complete these DirecTV-mandated requirements. *Id.*

In addition, installers were required to attend all training programs requested by DirecTV. PSUF at ¶ 40-41. Although requiring certifications for skilled work is not unusual, it is significant that DirecTV alone set the requirements for installer eligibility, not the Contracting Companies. *Id.* The facts do not actually show any specific requirements set by the Contracting Companies and DirecTV does not dispute this finding.

With regard to DirecTV's ability to fire installers, DirecTV had the authority to reprimand and discipline technicians by giving them less desirable routes or no route at all. PSUF at 97-98.[6] Under the exclusivity agreement, Installers who did not get DirecTV work orders could perform no alternate installation work. PSUF ¶ 96. The exclusivity language in the DirecTV "Services Provider Agreement" (SPA) forbade the Contracting Companies—and effectively the Installers—from serving any other companies offering comparable programming or television services. PSUF ¶ 93-96.[7] Thus, without DirecTV-generated and authorized work orders, an Installer had no work and therefore no pay. In effect, DirecTV could constructively discharge an Installer by refusing to give him or her work.

Other courts have determined such actions to be "a sanction somewhat equivalent to firing" where the company supplied the "vast majority" of the subcontractor's work. *Lemus v. Timberland Apartments, L.L.C.*, 2011 U.S. Dist. LEXIS 151917, 2011 WL 7069078, at *10 (D. Or. Dec. 21, 2011).[8]

---

[6] The SPA gives DirecTV the absolute right to prevent any technician from working on DirectTV work orders in its sole discretion. (Ex. 29, SPA Exhibit 2.c P B. ("DirecTV, in its sole discretion and upon notice to Contractor, may terminate the subcontractor status of any such third party or subcontractor and Contractor may not engage or otherwise utilize such third party or subcontractor in the performance of Services as set forth herein unless and until DirecTV, in writing, reinstates such third party or subcontractor, if ever.") Even if DirecTV only did this in certain circumstances, the factor analyzes whether DirecTV had the power to do so, not if DirecTV actually did.

[7] DirecTV claims that certain individual Plaintiffs, namely Lasater, performed work for other satellite and internet companies. D. Statement of Facts ¶¶ 50-59. While this fact is relevant, it does not create any genuine dispute of material fact. Even if the Court finds these facts to be entirely true, DirecTV still had the power to stop technicians like Lasater from working on other orders. DirecTV still had the ability to remove an Installer's Tech ID, constructively discharging an Installer. Seeing as the Contracting Companies served DirecTV exclusively, this would effectively fire an Installer from the Contracting Company. PSUF ¶ 93 (undisputed).

[8] DirecTV claims that deactivating an Installer's Tech ID would not prevent the Installer from doing other work for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

Although DirecTV argues that it did not directly sanction any installer, *Torres-Lopez* does not require exclusive or even direct power to hire or fire. Indirect power is sufficient. The undisputed facts indicate that DirecTV, rather than the Contracting Companies, set the standards for employment and had indirect power to hire and fire Installers. No reasonable jury could find against Plaintiffs on this factor.

      ii.  ***Supervision and Control of Employee Work Schedules or Conditions of Employment***

The Court next considers whether Plaintiffs have offered undisputed evidence that DirecTV supervised and controlled the Installers' work schedules and conditions of employment. *Torres-Lopez*, 111 F.3d at 642.

When a customer contracted DirecTV to schedule installation, DirecTV scheduled and distributed installation jobs in the form of daily work orders. PSUF ¶ 64-67; 73. This assignment system was the same for both DirecTV employees and the Installers working through Contracting Companies. *Id.* In the daily work orders, DirecTV assigned specific employees to particular work orders, via their pre-assigned Tech IDs. *Id.* Once DirecTV assigned the routes to each Installer, DirecTV required the Installers to complete the routes in a specific window. *Id.* ¶ 73.[9] Such a requirement essentially controls the hours each Installer must work. *Bowerman*, 2017 WL 1036645, at *20. DIRECTV has no response and does not dispute the fact. Instead, DIRECTV argues that the Contracting Companies could reassign the work orders whenever it was necessary. But this possibility is not material to the analysis because the factor does not preclude others from also having some supervision or control over the Installers. Even if reassignments occurred daily, the evidence is that the Contracting Companies did not change a significant percentage of the routes. Furthermore, DIRECTV directed certain routes as disciplinary measures (PSUF ¶ 97), and had the right to reject any reassignments. *Id.* ¶¶ 27, 65.

The Court must also consider the full scope of DirecTv's control over the day-to-day conditions of employment. DirecTV required Installers to wear DirecTV uniforms, display DirecTV badges, and

---

Contracting Company; however, the Installer could not work for any other cable companies or companies with similar products because of the SPA. The Installer would most likely have to leave his current Contracting Company to continue the work for which he received training and certification, both required by DirecTV.

[9]  DirecTV claims that it did not actually specifically assign work to installers; however, DirecTV cannot change the facts by simply relabeling the assignments and saying it only "soft-assigned" the orders. A "soft-assign" is still an assignation of duties, which leads to a showing of supervision under *Torres-Lopez*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

drive clean, personal vehicles branded with DirecTV signage. PSUF ¶ 39. This is distinguishable from the cable company cases DirecTV cites for support. There, contracted employees wore neutral uniforms or uniforms branded with the contractors' logos, drove vehicles branded with the contractors' logos, and received direct assignments from the contractors' own dispatch department, not from the cable companies. *See Thornton*, 2014 U.S. Dist. LEXIS 135523 at *4-*5; *Zampos*, 970 F. Supp. 2d at 799-800; *Lawrence*, 2011 U.S. Dist. LEXIS 14386 at *4.[10] There is no dispute that DirecTV exerted significant control over the Installers, which leaves the question of supervision.

The Ninth Circuit has characterized supervision as "substantial" where the potential joint employer "had the right to inspect all the work performed . . . both while it was being done and after . . . ." *Torres-Lopez*, 111 F.3d at 642. But this degree of control does not automatically lead to a finding of joint employment. *See Moreau v. Air France*, 356 F.3d 942, 951 (9th Cir. 2004) (supervision may sometimes exist for quality control purposes, which does not lead to a finding of joint employment). DirecTV claims that similar to the plaintiffs in *Moreau*, its supervision was for quality control purposes and not indicative of joint employment. There is one major difference: in *Moreau*, FAA regulations mandated quality control; here, DirecTV mandates quality control for its own purpose of customer satisfaction.

DirecTV's measures also go far beyond the quality control measure in *Moreau*. DirecTV required Installers to report arrival, departure and technical information (i.e., whether a broadband or telephonic connection was made) for each installation site. PSUF ¶¶ 55-60; 82-98. DirecTV's precise, computer-assisted supervision far exceeds that in *Torres-Lopez*, where a supervisor's mere "presence in the fields helped ensure that the farm workers performed satisfactorily." *Torres-Lopez*, 111 F.3d at 642. This computer-assisted supervision could evaluate performance, start and end times, connections made by the Installer, and efficiency. PSUF ¶¶ 55-60; 82-98; *See Carrillo v. Schneider Logistics Trans-Loading & Distribution, Inc.*, 2:11-CV-8557-CAS, 2014 WL 183956, at *8 (C.D. Cal. Jan. 14, 2014) (that Walmart exerted "substantial control" over the Impact and Premier workers "by establishing various operating metrics and productivity goals."). All of the material facts show that DirecTV had

---

[10] According to DirecTV, in other FLSA cases involving potential joint employment between cable providers and their contractors, Court rely most heavily upon this factor in finding against joint employment. *See, e.g., Thornton*, 2014 U.S. Dist. LEXIS 135523, 2014 WL 4794320 at *15; *Zampos*, 970 F. Supp. 2d at 803. DirecTV argues that these non-binding cases control in this matter. These cases are different in two ways. First, the facts provided in both *Thornton* and *Zampos* seem less robust than the facts before this Court. Second, the facts provided here show significantly more control and supervision than either of the Defendants in *Zampos* and *Thornton*.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

significant control and supervision over the Installers' work.

    iii.   ***Determination of Rate and Method of Payment***

        The Court next considers the evidence regarding DirecTV's payments to the Contracting Companies and the impact of that payment on the rate and method of payment to each individual Installer. *Torres-Lopez*, 111 F.3d at 643. DirecTV "exercise[s] some power in determining the pay rates" for laborers when piece-rate payments to the [Contracting Companies] effectively "cap" what workers may earn. *Id.* In *Real*, the Ninth Circuit found "[p]articularly significant[]" the determination of the laborer's rate of pay as a fixed percentage of the total amount paid to the contractor. *Real*, 603 F.2d at 756. By determining the amount paid to the contractor, DirecTV "may ultimately determine the amount the [employees] are paid for their labor." *Id.*

        The undisputed facts show that DirecTV had substantial control over Plaintiffs' compensation. DirecTV did not allow the Contracting Companies or the technicians to charge the customer anything for a standard installation. DirecTV strictly regulated how much contract technicians could charge for additional work that is ancillary to the standard installation. Most importantly, DirecTV does not allow Installers or the Contracting Companies to collect any payment at all from customers. PSUF ¶¶ 103-104. The contractors' actual compensation came from DirecTV in the form of fixed, "piece rate" payments—determined by DirecTV—for specified items on work orders that the technicians complete and close out with DirecTV.[11]  PSUF ¶¶ 99-107. DirecTV pays the Contracting Companies on a regular schedule and the Contracting Companies in turn pay the technicians on a correlating schedule. *Id.* ¶ 108. This system is effectively a cap on payment and DirecTV offers no evidence that the Contracting Companies can pay technicians more than what DirecTV chooses to pay each company.

        The financial arrangements between cable providers and the Contracting Companies have a direct bearing upon vertical joint-employment analyses. DirecTV asserts that its financial arrangement with the Contracting Companies did not dictate the amount the Contracting Companies chose to pay its installers. DirecTV argues it had no input into this determination. While the Court considers that DirecTV may not have had direct control over payment to the Installers, the issue is not all-or-nothing. Even if the Court accepts all of DirecTV's arguments as true, the Contracting Companies—and thus the

---

[11]  In fact, on the occasions that a customer's account was not activated, DirecTV provided no compensation to the Contracting Companies. PSUF ¶ 101.

                                                                          :

Initials of Preparer

                                           PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|----------|----------------------|------|------------------|
| Title | David Varas v. Directv, LLC | | |

Installers—were paid on a piece-rate basis only for closed line items on DirecTV work orders. *Id.* ¶ 99. To close any work order, the Installer had to communicate directly with DirecTV. *Id.* ¶ 100. DirecTV set the rates for what a customer would pay and the SPA prohibited Installers or the Contracting Companies from collecting any fees. *Id.* ¶¶ 103-04. There is no factual dispute that DirecTV's had substantial influence on the rate and method of Installer pay.

### iv. *Maintenance of Employment Records*

The fourth regulatory factor considers whether Plaintiffs can show who maintains employment records. As a preliminary matter, to "maintain" is "to continue in possession of (property, etc.)." *Perez v. Lantern Light Corp.*, 2015 U.S. Dist. LEXIS 69933 (*citing* Black's Law Dictionary (10th ed. 2014)). FLSA requires this Court to determine whether DirecTV maintained the following records:

1. Employee's full name and social security number.

2. Address, including zip code.

3. Birth date, if under 19.

4. Sex and occupation.

5. Time and day of week when employee's workweek begins.

6. Regular hourly pay rate and basis on which wages are paid: per hour, per week, piecework, commission, etc.

7. Hours worked each day and total hours worked each workweek.

8. Total daily or weekly straight-time earnings.

9. Total premium pay for overtime hours.

10. Total additions to or deductions from wages paid each pay period.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

11. Total wages paid each pay period.

12. Date of payment and the pay period covered by the payment.

29 C.F.R. § 516.2.

To meet this factor under FLSA, Plaintiffs must prove that DirecTV had actual control over—and not merely access to—employment records. *See, e.g. Zhao*, 247 F. Supp. 2d at 1160 ("access to. . . payroll records. . . cannot and should not be equated with. . . control, either direct or indirect, over. . . payroll records").

Here, the facts undisputedly support Plaintiff's argument for a finding of joint employment. DirecTV did not just maintain a database with the results of each Installers background checks and drug screenings; DirecTV's database matched Installers to jobs. The SIEBEL database included each Installer's Tech ID number, certification status, skill sets, weekly work schedules, starting location (typically the Installer's home address), and even cell phone numbers. PSUF ¶¶ 46-50, 52, 54. The database included such information as Installer arrival and departure times, system activation details, and the installed services for which the Installer was responsible. "This information is, for all intents and purposes, payroll information," scheduling information, information far beyond simple quality control. *Perez v. Lantern Light* at *29.[12] Most importantly, the database shows that DirecTV applied the same standards and metrics for contract technicians that it did for DirecTV's in-house technicians, who were classified as employees. PSUF ¶ 88.

DirecTV characterizes these records as mere "quality control" measures to ensure a positive customer and employee experience. But, as courts in parallel cases have held, a quality control motive for such exact recordkeeping can be a secondary rationale to other purposes for which it was kept by the

---

[12] Both sides pick apart this factor and attempt to provide different interpretations of what "maintenance of employment records" could mean; the concept is not confusing. DirecTV turns the Court's attention to *Jacobson*, where a vertical employer's maintenance of employment records did not prove an alleged joint-employment relationship. The Court declines to rely on *Jacobson*, where the record was not as developed as it is in this particular case. *Jacobson* mistakenly applied *Herman v. Mid-Atl. Installation Servs., Inc.*, 164 F. Supp. 2d 667 (D. Md. 2000), which actually held that when there are non-employment reasons for companies to maintain employment records, reasons such as quality control, the fourth factor is neutral. Even if DirecTV is right that this factor is neutral, the entirety of the *Bonette* analysis undisputedly points towards and employer-employee relationship.

|  |  | : |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

putative joint employer. *Cf. Zampos*, 970 F. Supp. 2d at 805 (quoting *Jacobson*, 740 F. Supp. 2d at 692) ("Plaintiffs fail to present any evidence that the maintenance of this type of information is used to exercise control over the work or working conditions of W & E technicians, or that Comcast retains these records for any purpose beyond quality control"). Here, Plaintiffs provide uncontroverted evidence that DirecTV used these records beyond quality control; the records were akin to employment records used to assign orders and to evaluate the length of each installation. DirecTV's recordkeeping "accomplished the purposes of establishing working conditions (by assigning Tech ID numbers to work orders), payroll (tracking completed work orders) and evaluating employee performance (compiling data into organized performance metrics)." *Perez v. Lantern Light* at *30. Because DirecTV's employee record maintenance was not just for the purpose of quality control, the Court finds no reasonable jury could find against Plaintiff on the undisputed facts.

Plaintiffs have provided undisputed evidence with regard to all four of the *Bonette* economic-reality factors. While DirecTV does dispute some of the facts, no genuine dispute exists with regard to a material fact that affects this analysis. Although the regulatory factors are the core of the FLSA employment analysis, the Court will also consider the non-regulatory factors as required by the Ninth Circuit.

### c. Non-Regulatory Factors

The Court now addresses eight non-regulatory factors to determine the economic relationship between DirecTV and the Installers. This test is used where an intermediary employer serves as the "primary" employer. *Torres-Lopez* at 643. "The determination of the relationship does not depend on . . . isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947).

#### i. The Installers' Work Was a Specialty Job on the Production Line

Under *Torres-Lopez*, the first factor considers the type of work at issue and the role of that work in the alleged joint employer's product delivery. In *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L. Ed. 1772 (1947), the Court held that beef de-boning work was a specialty job on the production line of a slaughtering plant whose principal export was boned beef. *Rutherford*, 331 U.S. at 724. The Ninth Circuit later ascribed cucumber-picking as the same, reasoning that the work "constituted one small step in the sequence of steps" necessary to grow and prepare cucumbers for

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

processing. *Torres-Lopez*, 111 F.3d at 643.

Plaintiffs' uncontested facts show that DirecTV is in the business of delivering satellite entertainment into the homes of its customers. PSUF ¶ 7. DirecTV's revenue comes from selling subscription packages. The deliverable in *Rutherford* was boned beef; the deliverable in *Torres-Lopez* was ripe cucumbers; here, the deliverable is satellite television entertainment. *See Perez v. Lantern Light,* at *32. In order to make the product available to customers, trained and certified Installers must perform a home installation. DirecTV cannot and does not dispute these material facts. Professional installation is a specialty job.

> ii. *Responsibility Between the Installers and DirecTV Could Easily Shift From One Installer to Another Without Material Changes*

The Court next considers the degree of material changes regarding Installer responsibility when the work passed from one Installer to another. The question originates in *Rutherford*, where "responsibility under the boning contracts without material changes passed from one boner to another." *Rutherford*, 331 U.S. at 730. Although the employer frequently changed the subcontractor responsible for hiring the boning employees, the same terms applied to the same employees who performed the same jobs in the same location. *Perez v. Lantern Light (*citing *Rutherford*, 331 U.S. at 730).

Plaintiffs have shown there is no material dispute with regard to this factor. The SPA, which dictated the Contracting Companies' responsibilities and the technicians' responsibilities, is a form contract. PSUF ¶ 21. DirecTV subjected all technicians, regardless of which Contracting Company had hired them, to the same DirecTV policies and procedures. PSUF ¶¶ 68-69.[13]

> iii. *Plaintiffs' Work was "Piece Work" that Did Not Require Initiative, Judgement, and Foresight.*

The Court next examines whether Installers performed "piece work," and not work requiring

---

[13]  To the extent DirecTV relies on *Jacobson* to show that technicians would have to reapply to be hired by another Contracting Company, the argument fails. First, the *Jacobson* court did not provide any support for its assertion that this fact would show an independent contractor relationship. Second, even the existence of this fact alone would not be enough to change the material analysis under FLSA. stronger evidence that the work was interchangeable.

Initials of Preparer                    : _____

                                         PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

initiative, judgment or foresight. The parties do not dispute that the Installers are paid "piece rates." *Rutherford* held that while depended on the efficiency of each employee's work, it was more like piecework than an enterprise that actually depended for success upon the initiative, judgment, or foresight of the typical independent contractor. The Plaintiffs have shown that there is no genuine dispute of material fact here.

Ample evidence in the record supports the skillset of a satellite-installation technician. But the laborer's "initiative, judgment or foresight" does not simply require the Installer's proficiency in a given task. Instead, the Court considers the impact, if any, of a worker's "initiative, judgment or foresight" upon the success of the job. "DirecTV nullifies individual initiative, judgment or foresight when it insists that Tech ID number assignments were of low importance, and welcome to re-tech by [the Contracting Companies]." *Perez v. Lantern Light*, supra at *15. Even though the Installers must do their jobs effectively, the job does not require any initiative or judgment. Instead, Installers often call the DirecTV call center while performing the services in order to set-up the connection and troubleshoot. PSUF at ¶ 59. Plaintiffs have shown that there is no dispute about the facts here.

> ### iv.   *Plaintiffs' Compensation Was Based on DIRECTV's Managerial Skill, Not Plaintiffs' Managerial Skill.*

The Court examines evidence regarding the Installers' managerial skill, particularly with regard to the opportunity for profit or loss. Where the subcontractor's opportunity for profit or loss depends largely upon the employer's managerial skills, the evidence shows joint employment. *Real*, 603 F.2d at 755.[14] DirecTV argues that if the Installers increase their installation speed, each Installer can make more money. However, any "managerial skill" contemplated by this factor relies on DirecTV's capability to generate work and send work orders to the Contracting Companies. No genuine dispute of fact exists that DirecTV controlled the number of installations it received and the Installers had no say in how many work orders DirecTV would assign them based on need.

> ### v.   *There Was Permanence in the Working Relationship*

---

[14] In *Real*, the Ninth Circuit compared the employer's many managerial skills against the contractor's "judgment and work in weeding, dusting, pruning, and picking." Id. Due to the lack of managerial skill on the part of the laborer, the Court concluded that the employer possessed "substantial control over important aspects of the appellants' work." *Id*.

|  | : |
|---|---|
| Initials of Preparer | |
|  | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

Permanence in the working relationship between the contracting company and the laborer suggests joint employment. *Torres-Lopez*, 111 F.3d at 644. In *Torres-Lopez*, the farm-workers only worked for thirty-two days out of a year; the court found no "permanence of the working relationship." *Id*. In contrast, the Plaintiffs worked on DirecTV orders on an open-ended basis and for several years at a time. PSUF ¶ 1. DirecTV does not dispute this. Although the Plaintiffs could leave at any point in time, they did not have to limit their work to a finite amount of work orders. Plaintiffs have proven that the relationship was not temporary or finite and there was far greater permanence than a typical independent contractor relationship.

### vi. *Plaintiffs' Work Was An Integral Part of DirecTV's Business*

This factor asks the Court to determine whether the Installers' work is an integral part of the alleged joint employer's business. The uncontroverted evidence shows that that "the work of the Installers is not only integral, but the service could not be provided by DirecTV without the installation." *Perez v. Lantern Light* at *44; *see, e.g., Torres-Lopez*, 111 F.3d at 644 ("Unless the cucumbers were picked and sent to the cannery, Bear Creek Farms would not have been able to realize any of the economic benefits from its substantial investment in growing the cucumbers."). Plaintiffs have provided undisputed, material facts that show that the Installers were integral to DirecTV's business.

### vii. *Plaintiffs Had No Business Organization That Performed For A Client Other Than DirecTV*

No dispute of material fact exists here because the SPA explicitly prohibits any Contracting Company from having Installers service DirecTV's competitors. PSUF ¶ 96. District courts in the Ninth Circuit find against joint employment where the employer of "a significant number of employees... perform services for companies other than [the putative joint employer]." *Zhao*, 247 F. Supp. 2d at 1159-60. Thus, an airline is not the joint employer of luggage handlers who shift as a unit from one carrier to another. *Moreau*, 356 F.3d at 951. Where employees as a group do not shift entirely between multiple work sites, joint employment is more likely. DirecTV offers no evidence of an entire group shifting between work sites. At best, DirecTV offers sparse and anecdotal evidence that some Installers had part-time jobs that the Installer completed on his own time.

DirecTV notes that some of the Installers were working for other companies on the side, occasionally other cable companies without the permission of their Contracting Company. DSUF ¶¶

Initials of Preparer _____ : _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

50-59. Even if the Court accepts this as entirely true, DirecTV's evidence does not show that the employees shifted as a group between multiple work sites. Instead, as Plaintiff's uncontroverted facts demonstrate, these other jobs were only part-time and not nearly as extensive as DirecTV claims. PSUF ¶¶ 52, 55. The work was supplemental and frequently occurred when Plaintiffs were not receiving DirecTV orders. *Id.*; *see* Varas Dep. 49:1-50:10. More importantly, there is no dispute that the business organizations as a whole, the Contracting Companies generally served DirecTV exclusively. PSUF ¶ 93, Exh. 29. Plaintiffs have provided undisputed evidence that the Installers did not shift as a group from one worksite to another.

viii.  *The Equipment and Place of Work Does Not Support Either Side*

It is undisputed that DirecTV provided the principal equipment for installation. PSUF ¶ 81. The place of work—DirecTV's customers' homes—is inconsequential as it is not specific to the Installers or DirecTV. DirecTV argues that the Plaintiffs did pay for tools; however, Plaintiffs respond that the payment for the tools was "minimal in comparison" to what DirecTV invests to provide service to its customers. *See Torres-Lopez*, 111 F.3d at 644; *Real*, 603 F.2d at 755; *Flores*, 2017 WL 1436039, at *13-14. DirecTV asserts that even though the "installed satellite dishes and boxes were owned by DirecTV, that fact is "not significant." D. Opp. MSJ at *23 fn. 20.[15] DirecTV suggests that because the devices are the means of providing satellite services to consumers, it would be impractical for anyone but DirecTV to provide the equipment. Neither party provided the work location and both parties provided equipment.

### d.  **FLSA Conclusion**

Under both the *Bonette* factors and the *Torre-Lopez* factors, Plaintiffs have provided undisputed evidence to show an employer-employee relationship. Much of the evidence Plaintiffs rely upon is not disputed by DirecTV and to the extent any disputes exist, the disputes are not material. More importantly, the multi-factor tests are not to be mechanically applied as some sort of checklist.

---

[15]  DirecTV cites to *Zampos*, 970 F. Supp. 2d at 805 ("While Comcast provides proprietary equipment to install and service Comcast customer's work orders, it is undisputed that . . . technicians use their own tools . . . to do so"). These dishes and boxes are the means of providing satellite services to consumers, so it would be impractical for the devices to be owned by anyone else. *Moreau*, 356 F.3d at 951 (fact that alleged joint employer owned some equipment did not suggest joint employment when ownership was explained by business rationale).

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|----------|----------------------|------|------------------|
| Title | David Varas v. Directv, LLC | | |

"Economic realities, not contractual labels . . . , determine employment status for the remedial purposes of FLSA." Real, 603 F.2d at 755. Courts should look not to "isolated factors but rather upon the circumstances of the whole activity" in determining the scope of the employment relationship. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). The factors simply help inform the Court's understanding of those circumstances.

The circumstances of the whole activity show that a reasonable jury could not find for DirecTV. For a jury to find for DirecTV, the jury would have to ignore much of the evidence offered above, evidence that is undisputed. The evidence shows that DirecTV exerted a significant amount of control over the Installers. DirecTV established guidelines for hiring. DirecTV effectively set the rate of payment for these Installers, as it was frequently the only customer for the Contracting Companies. DirecTV scheduled each Installer to specific work assignments. And DirecTV's agreement with the Contracting Companies forbade the Companies from working for any other cable or television installation service.

DirecTV claims that the existence of this Contractor Agreement shows the separation between it and the Contracting Companies. DirecTV claims that the Contracting Companies employed the Installers because the companies had more control over the Installers than DirecTV did. The undisputed evidence shows otherwise; however, even if the Court accepts all of DirecTV's arguments as true, a reasonable jury would still find for the Plaintiffs. *Bonnette* and *Torres-Lopez* do not consider who has more control in a joint-employment analysis. Even if the Contracting Companies did have more control than DirecTV, the question is whether DirecTV still exerted a substantial amount of control and supervision over the Installers. Undisputedly, DirecTV did.

A reasonable jury does not have to find that DirecTV was the sole employer of the Installers. But based on the undisputed facts provided, any reasonable jury would find that DirecTV was a joint employer of the Installers under the Fair Labor Standards Act. That is all FLSA requires.

V.    **Employment Status Discussion Under California Law**

The parties dispute whether the DirecTV correctly classified the Plaintiff Installers as independent contractors under California law. In their Complaint, Plaintiffs allege violations of the

Initials of Preparer                :

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

California Labor Code and California Business and Professions Code.[16] A violation of these statutes may only be found if the Plaintiffs are employees as a matter of law.

While the employment analysis under California law is similar to the Fair Labor Standards Act, there is one critical difference: under California Law, the Defendant bears the burden of proof to show that the Installers were not employees of DirecTV.[17] This burden-shifting principle comes from a California statute. Under Cal. Lab. Code § 3357, "Any person rendering service for another, other than as an independent contractor, is presumed to be an employee." [18] *Id.* As the FLSA discussion above shows, there is no dispute that the Installers provided a service to DirecTV in completing the requisite installations.

Once the Court determines that the Installers provided DirecTV with a service, the burden of proof is on the party attacking the employment relationship, *Isenberg v. California Emp. Stab. Comm.*, 30 Cal.2d 34, 180 P.2d 11. Even when the worker is allegedly an independent contractor, the employer has the burden of proving that the injured worker was an independent contractor. Cal. Lab. Code § 5705; *Germann v. Workers' Comp. Appeals Bd.*, Cal. App. 2d Dist. (Sept. 22, 1981). Also, when workers provide a service to a Contracting Company who then provides service to another company means, both controlling parties can be employers. *See, e.g., Heiman v. Workers' Comp. Appeals Bd.* (Cal. App. 2d Dist. Mar. 13, 2007) (A property manager who hired a contractor to install rain gutters was liable for payment of workers' compensation benefits to the contractor's employee. The manager

---

[16] Plaintiffs allege violations of the following sections: 1. Cal. Labor Code 1194, 510; 2. Cal. Labor Code 1197, 1197.1, 1199; 3. Cal. Labor Code 221, 225, 225.5; 4. Cal. Labor Code 226, 1174, 1175; 5. Cal Labor Code 2802, 226.8; 6. Cal. Labor Code 201, 203, 204; and, 7. Cal. Bus. & Prof. Code 17200.

[17] DirecTV claims that even under California law, the Plaintiffs still bear the burden of showing the employer-employee relationship. Even if that were true, Plaintiffs have met their burden here. The FLSA analysis, where the Plaintiff bore the burden, is similar to the California law analysis and the undisputed evidence showed a joint-employment relationship under federal law. The same would apply here.

[18] Even when the worker is allegedly an independent contractor, the alleged employer has the burden of proving that the injured worker was an independent contractor (Lab. Code, § 5705). *Germann v. Workers' Comp. Appeals Bd.* (Cal. App. 2d Dist. Sept. 22, 1981), 123 Cal. App. 3d 776, 176 Cal. Rptr. 868, 1981 Cal. App. LEXIS 2158. "Although § 3357 is somewhat tautological, it is best understood as creating a presumption that a service provider is an employee unless the principal affirmatively proves otherwise. Moreover, the general presumption that any person in service to another is an employee covered by workers' compensation is more clearly shown in Lab. Code, § 5705, subd. (a) (burden of proof; affirmative defenses in workers' compensation proceedings)." *Yellow Cab Cooperative, Inc. v. Workers' Comp. Appeals Bd.* (Cal. App. 1st Dist. Jan. 16, 1991).

Initials of Preparer                     :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

also had the burden of proof in showing that an employment relationship did not exist); *Aramark Corp. v. Workers' Compensation Appeals Bd.*, Cal. App. 5th Dist. (June 21, 2001) (An inmate who worked in kitchen of county jail was presumptive employee when county was in contract with food service operator to provide food services at jail; the county had the burden of showing an employment relationship did not exist).

The Court finds that DirecTV cannot provide undisputed evidence that the Installers were independent contracts. Based on the undisputed evidence before the Court, a reasonable jury could only find that the Installers were employees of DirecTV under California law.

   a. **Legal Standard**

In *Martinez v. Combs*, the California Supreme Court held word "employ" has an expansive meaning with "three alternative definitions":

   It means: (a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship.

*Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010). Parties may establish an employment relationship through any one of these three definitions. In its Motion for Partial Summary Judgment, Plaintiffs' allege that while all three definitions can be met, it only analyzes two: (1) that DirectV "suffered or permitted" Plaintiffs to work; and (2) that DirecTV employed Plaintiffs under the common law standard. The Court begins with the common law analysis, as many of the factors model the Ninth Circuit's FLSA test.

   b. **DirecTV Employed the Installers Under the California Common Law Test**

California uses a right-to-control test for its common law analysis of employment classification. "The principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S. G. Borello & Sons, Inc. v. Dep 't of Indus. Relations*, 48 Cal. 3d 341 (1989). California courts also consider "several 'secondary' indicia of the nature of a service relationship." *Id*. These additional factors are:

   (a) whether the one performing services is engaged in a distinct occupation or business;

                                                              :
Initials of Preparer
                                                          PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|----------|----------------------|------|------------------|
| Title | David Varas v. Directv, LLC | | |

(b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision;

(c) the skill required in the particular occupation;

(d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work;

(e) the length of time for which the services are to be performed;

(f) the method of payment, whether by the time or by the job;

(g) whether or not the work is a part of the regular business of the principal; and

(h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id.* "Even if one or two of the individual factors might suggest an [independent contractor] relationship, summary judgment is nevertheless proper when . . . all the factors weighed and considered as a whole establish . . . an [employment] and not an [independent contractor relationship.]" *Arnold v. Mut. of Omaha Ins. Co.*, 202 Cal.App.4th 580 (2011).

> *i.  DirecTV Had the Right to Control The Manner and Means of Accomplishing the Desired Results*

In determining who has the right to control the manner and means of accomplishing the desired result, the Court considers what the contract allows or requires in actual effect. *See, e.g., Empire Star Mines Co. v. Cal. Emp't Comm'n*, 28 Cal.2d 33, 168 P.2d 686, 692 (1946) ("If the employer has the authority to exercise . . . control, whether or not that right is exercised with respect to all details, an employer-employee relationship exists."). As discussed in Section IV already, the SPA and DirecTV's policies and procedures allow DirecTV to exercise a great deal of control over the manner in which the Installers do their jobs. Plaintiff has shown that any reasonable jury viewing the undisputed facts would find the existence of an employee-employer relationship.

> *ii.  DirecTV Does Have The Right to Effectively Terminate At Will*

This is discussed extensively in Section IV(b) above. The facts undisputedly show an employer-employee relationship.

> *iii.  The Installers Are Not Engaged in a Distinct Occupation or Business*

:  _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

The California Court of Appeal reasoned in *Estrada v. FedEx Ground Package System, Inc.*, 64 Cal.Rptr.3d 327, 334 (2007), that "the work performed by the drivers is wholly integrated into FedEx's operation. The drivers look like FedEx employees, act like FedEx employees, and are paid like FedEx employees." *Id.; see also Alexander v. FedEx Ground Package System, Inc.*, 765 F.3d 981, 995 (9th Cir. 2014) ("While the drivers have opportunities to expand their business by taking on additional routes and hiring helpers, these opportunities themselves are only available subject to FedEx's business needs.") Here, Plaintiffs' work was wholly integrated into DirecTV's operations. The Installers were the face of DirecTV, had to wear DirecTV uniforms, and ensure that their cars had DirecTV insignia as well. . Plaintiffs performed an integral part of DirecTV's business installing DirecTV equipment in the homes of DirecTV customers, following DirecTV's rules, at the time and place DirecTV decided. Plaintiffs have provided undisputed evidence that an employer-employee relationship does exist; a jury could only find in their favor.

      iv. *DirecTV Indirectly Monitored the Installers, Even Though There Was No Direct Supervision*

As discussed in Section IV, DirecTV decided when the Installer should complete each work order and how to complete each work order by requiring Installers to use a mobile phone application or call DirecTV during each installation. The facts undisputedly show an employer-employee relationship.

      v. *DirecTV and the Contracting Companies—and thus, Installers—Had An Open-Ended Relationship*

"The notion that an independent contractor is someone hired to achieve a specific result that is attainable within a finite period of time . . . is at odds with carriers who are engaged in prolonged service." *Antelope Valley Press v. Poizner*, 75 Cal.Rptr.3d 887, 900 (2008). Plaintiffs state that the installation work was on an open-ended basis, where each Installer performed work for DIRECTTV through one contracting company or another for several years. PSUF ¶ 1. The relationship ended only when the Installers left the job or DirecTV deactivated their ID numbers. While the relationship was not permanent, it did not end within a finite period of time or at the completion of a specific project. Plaintiffs have provided undisputed evidence that this factor supports an employer-employee relationship.

      vi. *The Method of Payment Is Not Dispositive In This Case*

                                                       :

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|----------|----------------------|------|------------------|
| Title | David Varas v. Directv, LLC | | |

Under this factor, hourly payment suggests employee status while payment-per-job suggests independent contractor status. In this case, the Contracting Companies paid the Installers after DirecTV paid the Contracting Companies. Defendants state that the Installers were paid by the job and the system incentivized Installers to undertake more orders and work more efficiently. The evidence shows that DirecTV used a payment-per-job scheme to pay the Contracting Companies. While a jury could find that this factor supports finding an independent contractor relationship, "payment may be measured by time, by the piece, or by successful completion of the service, instead of a fixed salary, and still constitute employee wages if other factors indicate an employer-employee relationship." *Germann*, 176 Cal.Rptr. at 874.

As discussed in Section IV above, DirecTV's payments to the Contracting Companies effectively capped how much each Installer could make per work order. Furthermore, here "there is ample independent evidence that the employer has the right to control the actual details of the [employee's] work . . . ; the fact that . . . the employee is paid by the job rather than by the hour appears to be of minute consequence." *Tieberg*, 88 Cal.Rptr. 175, 471 P.2d at 982. Employers can easily change the method of payment without changing any of the other factors, making this factor less indicative of the actual relationship between two parties. Therefore, even though Installers are paid per job, this factor is only of minute consequence in analyzing the status of the Installers.

       vii. *Both DirecTV and the Installers Determined the Instrumentalities, Tools, and Location of Work; This Factor Is Neutral And Not Dispositive*

As discussed in Section IV above, DirecTV supplied some of the tools and instrumentalities for installation; Installers had to provide the rest of the necessary supplies. The location of the DirecTV customer's home was the location of the work. Neither party in this matter provided the location. This factor does not help either side.

       viii. *Installers Needed Abilities Beyond Those Of A General Laborer; This Factor Suggests an Independent Contractor Relationship*

This factor considers whether the work involves a particular skill beyond that expected of any general employee. *Borello*, 48 Ca.3d at 356. DirecTV argues Plaintiffs' work required skill,

| | : | |
|--|--|--|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

certification, and training, all of which DirecTV required before assigning a Tech ID number to any Installer. DirecTV relies on *Brown*, 32 Cal. App. 4th at 202-03, holding that truck drivers were independent contractors in part because truck driving—"while perhaps not a skilled craft—requires abilities beyond those possessed by a general laborer." *Id.* Additionally, DirecTV required monthly trainings, which indicates that the Installers had to possess specialized skills. DirecTV shows that there is no dispute of material fact and that Installers have abilities beyond those of a general laborer.

### ix.  *The Parties Contemplated An Independent Contractor Relationship*

Whether the parties believe they are creating the relationship of employer-employee is indicative of employment status. *Narayan*, 616 F.3d at 900. California law is clear that the label placed by the parties on their relationship is not dispositive. *Alexander*, 765 F.3d at 989. Here, Defendants argue this factor shows an independent contractor relationship because Plaintiffs signed contracts indicating they were independent contractors, filed taxes as independent contractors and deducted the expenses, filled out a 1099 and admit that they were aware of their independent contractor status from the outset. DSUF ¶¶ 15. Plaintiffs counter by arguing that, at the outset, the Plaintiffs lacked knowledge of how broadly and pervasively DirecTV would actually control the particulars of their working lives once they were in the job. The contract shows the intent to form an independent contractor relationship but this factor is not dispositive because the creation of the label does not negate the other factors that show employment.

### x.  ***Common Law Test Conclusion***

The factors above all stem from the right-to-control test in *Borello*. The factors, similar to the FLSA test, are not a checklist. The test simply provides the Court with guidance on how to determine the scope of the relationship between two parties. As noted above, even if some of the individual factors suggest an independent contractor relationship, summary judgment in favor of the Plaintiff is still appropriate after considering the evidence as a whole. *Arnold v. Mut. of Omaha Ins. Co.*, 202 Cal.App.4th 580 (2011).

Here, no reasonable jury could find for the Defendant once they consider the entirety of the evidence. DirecTV had the right to control all aspects of the Installers' work, including: hiring, certification requirements, scheduling, disciplinary measures, supervision of each work order, uniforms, the Installers' manner of greeting customers, and *de facto* firing. The undisputed evidence shows these facts to be true. Regardless of how much control DirecTV asserts the Contracting Companies possessed

Initials of Preparer            :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

(which there is no reason to dispute), DirecTV was a joint-employer under California law.

### c.  DirecTV "Suffered or Permitted" the Installers to Work on DirecTV Orders

While it is not necessary to determine whether other definitions of "employ" also show an employment relationship between DirecTV and the Installers, the Court addresses the second argument here.

Under the "suffer or permit" definition, the court in *Martinez* explained that the "verbs 'to suffer' and 'to permit' . . . are terms of art in employment law." Suffer and permit mean to acquiesce and fail to hinder. An "employer" who suffers or permits is one who knows that someone is working for the company and fails to prevent it. The purpose of such an expansive definition is to prevent companies from evading the reach of the labor laws through "irregular working arrangements . . . [that] a business might otherwise disavow with impunity." *Id.* at 69.

Plaintiffs demonstrate DirecTV set hiring requirements for the Installers and scheduled the Installers to work on particular orders. There is no dispute that DirecTV acquiesced through permission and did not stop—effectively suffering—the Installers laboring for DirecTV. No technician could work on DirecTV work orders without "receiving an approval from DIRECTV" and DIRECTV could "terminate the subcontractor status" of any technician in DIRECTV's "sole discretion." PSUF ¶¶ 27, 33. DIRECTV tracked the work each Plaintiff did in its work order management system (PSUF ¶¶ 46-60) and continued to allow Plaintiffs to work on DIRECTV work orders by individually assigning them DIRECTV work. (PSUF ¶¶ 61-64) There is ample evidence that DIRECTV employed Plaintiffs under the "suffer or permit" definition.

DirecTV suggests that, in practice, DirecTV did not truly exercise its unqualified discretion because it approved anyone that passed a background check, and unilaterally deactivated technicians only in rare instances.[19]  Even if this is all true, it is not material to this analysis because the test focuses on DirecTV's ***right*** to prevent a technician from doing DIRECTV work, not DirecTV's use of that right. *See Martinez*, 49 Cal. 4th at 70. DIRECTV's contractual right to prevent an Installer from working on a

---

[19]  Plaintiffs correctly note that DIRECTV also conflates this analysis with whether DIRECTV has the power to hire and fire under other tests. D. Opp. 14-15. This is wrong because the "suffer or permit" language was specifically crafted to extend beyond common law employment relationships. *See Martinez*, 49 Cal. 4th at 57-58 & 69-70.

:  _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

DirecTV order was unlimited. Under either definition, an employer-employee relationship existed under California law.

VI.   **Remaining FLSA Issues Outside of Misclassification**

a.   **Some Plaintiffs' Minimum Wage Claims Do Not Fail As A Matter of Law**

The FLSA sets the federal minimum wage at $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). "To claim improper compensation under this provision, plaintiffs must allege that the wages received fell below this statutory minimum. However, the workweek as a whole, not each individual hour within the work week, determines an employee's 'wages' for purposes of determining FLSA violations." *Samuels v. We've Only Just Begun Wedding Chapel, Inc*., 2014 WL 1302047, at *3 (D. Nev. Mar. 31, 2014), citing 29 C.F.R. §776.4(a). To allege a violation of the FLSA's minimum wage provision under this workweek formulation, Plaintiffs must allege facts to support that their average weekly wage (i.e., their total weekly salary divided by the total number of hours they worked) fell below the statutory minimum in at least one week. *Farris v. Cnty. of Riverside*, 667 F. Supp. 2d 1151, 1162 (C.D. Cal. 2009); *see also Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999).

DirecTV argues Plaintiff's minimum wage claims fail because each Plaintiff earned more than the FLSA minimum ($7.25) when his weekly pay is averaged across his hours worked, as illustrated here:

***Chart 1: DirecTV's Incorrect Calculation of Pay Rate***

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

| Plaintiff | Hours Per Week | Weekly Pay | Regular Rate |
|---|---|---|---|
| Lasater | 70 | $1200 | $17.14 |
| Guzik | 50 | $900 | $18.00 |
| Trujeque | 70 | $600 | $8.57 |
| Le | 60 | $875 | $14.58 |
| Lkhagvadorj | 66 | $750 | $11.36 |
| Varas | 60 | $1,000 | $16.67 |
| Nault | 63 | $1,000 | $15.87 |
| Kidd | 55 | $1,200 | $21.82 |
| Solis Juarez | 70 | $1,400 | $20.00 |

In calculating the regular rate, DirecTV cites 29 C.F.R. 779.419, which provides the regular rate of pay "is a rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into straight-time earnings for such hours to obtain the statutory regular rate." Utilizing this formula, DirecTV applied Plaintiff's allegations in the complaint, to calculate Plaintiff's regular rate. Under these calculations, Plaintiff's FLSA claims would fail because "when averaged across their total time worked," DirecTV still payed them above minimum wage. *Adair*, at 1063.

In response, Plaintiff alleges that the proper calculation is as follows:

*Chart 2: Plaintiffs' Correct Calculation of Pay Rate*

| Plaintiff | Hours Per Week | Weekly Pay After Reducing Chargebacks & Out-of-Pocket Weekly Expenses | Regular Rate |
|---|---|---|---|
| Lasater | 70 | $1065.00 | $9.64 |
| Guzik | 50 | $702.42 | $9.05 |
| Trujeque | 70 | $535.97 | $7.66 |
| Le | 60 | $633.22 | $10.55 |
| Lkhagvadorj | 66 | $1035.68 | $9.63 |
| Varas | 60 | $419.88 | $4.66 |
| Nault | 63 | $1073.78 | $7.33 |

Initials of Preparer                    :

PMC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

| Kidd | 55 | $490.67 | $8.92 |
|---|---|---|---|
| **Solis Juarez** | 70 | $987.43 | $10.53 |

In calculating the wages, Plaintiff utilized the allegations in the complaint, as well as paystubs and tax returns from discovery in their calculation. Plaintiff argues DirecTV's calculation is incorrect because it relies on Plaintiff's allegations, not the actual evidence of Plaintiff's pay. DirecTV's calculations also do not account for out-of-pocket expenses.

This Court must first determine whether the weekly out-of-pocket expenses should be deducted from Plaintiff's gross income.[20] Here, Defendant argues the expenses should not be deducted. DirecTV's argument is concerning in light of the fact that DirecTV previously conceded that deducting out-of-pocket expenses is proper before this Court. In *Cooper v. DirecTV, LLC*, C.D. Cal. No. 2:14-cv-08097, Dkt. No. 30, DirecTV moved to dismiss the FLSA minimum wage claims because Plaintiff's complaint pled facts that demonstrated the Plaintiffs were paid well above minimum wage. In calculating the regular rate, DIRECTV employed the following formula:

$$\text{Weekly Wage} - \text{Chargebacks} - \text{Business Expenses}$$
$$(40 \text{ hours} + 1.5 \text{ (\# overtime hours)}$$

When the Court granted DirecTV's motion to dismiss the minimum wage claims in *Cooper*, it stated that this calculation was correct and Plaintiffs did not oppose this calculation. "Free and clear" payment as explained in 29 C.F.R. 531.35 supports this formula:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in methods other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's

---

[20] Out-of-pocket expenses included tools, gasoline for an Installer's vehicle, wear-and-tear on the cars, uniform shirts, and more. *See, e.g.* Ex. 132, Guzik Dep. 191:17-21; 194:20-195:2; 199:6-8; Ex. 142, Lkhagvadorj Dep. 113:2–6.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|----------|----------------------|------|------------------|
| Title | David Varas v. Directv, LLC | | |

particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.[21]

*Id.* Therefore, the weekly expenses and chargebacks should be deducted from the weekly pay.

DirecTV also claims that the calculations should utilize the allegations in the complaint because allegations in a pleading are considered judicial admissions that conclusively bind the party who made them. Defendant's argument would be true had Plaintiffs filed a verified complaint, but Plaintiffs did not. Furthermore, DirecTV provides no rationale for why all evidence of payment should not be considered at the summary judgment stage.

Under the calculations above, Plaintiff Varas has a minimum wage claim because the evidence shows that he was paid only $4.66 per hour. PSAF ¶ 81. In addition, Plaintiffs Le and Nault have minimum wage claims because they worked several hours a week for which they were paid nothing. PSAF ¶¶ 82-83. DirecTV provides no response to this testimony. Accordingly, three Plaintiffs (Varas, Le, and Nault) can also bring minimum wage claims under FLSA. All Plaintiffs can continue to bring overtime claims, improper deduction claims, and any other FLSA claims alleged in their complaints.

### a. Plaintiffs' Gap Time Claims Fail As A Matter of Law

Plaintiffs seek pay for "gap time," which is non-overtime work that is not covered by the minimum wage provision. It is not covered because, even though the time is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked. *Adair v. City of Kirkland*, 185 F.3d 1055, 106 n.6 (9th Cir. 1999). DirecTV is correct that pure gap-time claims do not exist under FLSA. *Farris v. Cnty. Of Riverside*, 667 F. Supp. 2d 1151, 1161 (C.D. Cal. 2009) (FLSA "does not provide for recovery under a gap time theory"); *see also Maciel*, 569 F. Supp. 2d at 1056 ("a 'pure gap time' claim is untenable").[22]

---

[21] 29 C.F.R. 531.35 uses tools as an example of out-of-pocket expenses; however, out-of-pocket expenses can cover tools of the trade, vehicles used for the job, gasoline used for travel from installation to installation, and more.

[22] "The Ninth Circuit has not addressed the issue of whether a gap time claim may be asserted under the FLSA, as distinguished from whatever proceedings may be available for breach of contract or under the collective bargaining agreement." *Maciel v. City of L.A.*, 569 F. Supp. 2d 1038, 1055 (C.D. Cal. 2008). But in declining to address the issue, the Ninth Circuit recognized that "[i]t is not clear that a gap time claim may be asserted under the FLSA, as distinguished from

|  | : |
|--|---|

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

 

Plaintiffs claim that they do not seek a pure gap time claim but an *overtime* gap time claim. Overtime gap time claims seek compensation for unpaid hours worked under 40 hours a week—in the weeks the plaintiff has worked overtime—as part of the plaintiff's overtime damages. This distinction is incorrect. Plaintiffs admit that they are not entitled to minimum wage for unpaid work as long as their average rate of pay is more than the minimum wage. Plaintiffs lack authority for their argument that the unpaid work somehow becomes compensable when a Plaintiff works more than 40 hours in a week. As DirecTV correctly notes, under Plaintiffs' logic, an employee who worked 40 hours in a week of which 15 were unpaid would be entitled to no gap time pay, while an employee who worked 41 hours of which 15 were unpaid would be entitled to 15 additional hours of pay. This has no basis in logic or in the text of the FLSA.[23] Plaintiffs gap time claims fail.

     b.  **DirecTV Cannot Proves That Its Conduct Falls Under the FLSA 207(i) Exemption**

29 U.S.C. § 207(i) of the Fair Labor Standards Act states:

"No employer shall be deemed to have violated subsection (a)[24] of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under

---

whatever proceedings may be available for breach of contract or under the collective bargaining agreement." *Adair*, 185 F.2d at 1062-63. And district courts in the Ninth Circuit have agreed with the majority position that the FLSA does not provide for gap time claims. *Maciel*, 569 F. Supp. 2d at 1055; *Abbe*, 2007 U.S. Dist. Lexis 87501, 2007 WL 4146696, at *14.

[23]  Plaintiffs cite *Donovan v. Crisostomo*, 689 F.2d 869 (9th Cir. 1982), but that case—as DirecTV notes—is distinguishable. There, the Ninth Circuit considered a scheme whereby an employer "kicked back" pay to himself as a means of avoiding the obligation to pay overtime. *Id*. at 872. The Ninth Circuit authorized the recoupment of the kickback for those weeks in which the plaintiffs worked overtime, noting that the reason was to avoid "allow[ing] employers to frustrate the policy of . . . the FLSA through the use of kickbacks." *Id*. at 876. Here, there are no allegations of kickbacks or anything similar.

[24]  29 U.S.C. § 207(a)(1) is the portion of FLSA under which Plaintiffs bring their claim. The relevant portion states:
    Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

*Id*.

 

                                                   :

Initials of Preparer              PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|----------|----------------------|------|------------------|
| Title    | David Varas v. Directv, LLC | | |

section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i). Per the statutory language, Defendant bears the burden of proving three elements: (1) the plaintiffs receive a regular pay rate exceeding one and one-half times the minimum wage; (2) the defendant employer is a retail or service establishment; and (3) the plaintiffs receive more than half of their compensation from commissions during the representative period. *Id.* "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Ulin*, No. C-09-03160 EDL, 2010 U.S. Dist. LEXIS 99153, 2010 WL 3768012, at *5 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Section 207(i) is to be "narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress." *See Gieg v. DDR, Inc.*, 407 F.3d 1038, 1045 (9th Cir. 2005). DirecTV to prove that it "plainly and unmistakably" applies. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). DirecTV has not met that burden and to the contrary, Plaintiffs have plainly and unmistakably shown the exception does not apply.[25]

### i.   *DirecTV Is A Qualifying Retail or Service Establishment*

DirecTV must first show that it is a qualifying "retail or service establishment." 28 U.S.C. § 207(i). Notably, FLSA does not define the term "retail or service establishment." As such, in *Gieg v. DDR, Inc.*, 407 F.3d 1038, 1047 (9th Cir. 2005), the Ninth Circuit crafted its own definition, requiring that the work performed be (1) recognized as retail in the industry and (2) 75% of the dollar volume of the retail services must not be for resale.

DirecTV argues that in prior cases against DirecTV and similar companies, satellite installation

---

[25] DirecTV cites a few cases where other courts have found that technicians, such as DirecTV installers, meet this exception. *Matrai v. DirecTV, LLC*, 168 F. Supp. 3d 1347, 1357-65 (D. Kan. 2016); *Carpenter v. DirecTV, LLC*, No. 14-cv-02854, Dkt. No. 146 (D. Colo. May 16, 2017); *Jones v. Tucker Commc'ns, Inc.*, 2013 WL 6072966, at *11 (M.D. Ga. Nov. 18, 2013); *Owopetu v. Nationwide CATV Auditing Servs., Inc. (Owopetu II)*, 2011 WL 4433159, at *7 (D. Vt. Sept. 21, 2011); *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423, 446 (N.D.N.Y. 2014); *Moore v. Adv. Cable Contractors, Inc.*, 2013 WL 3991966, at *5 (N.D. Ga. Aug. 1, 2013). None of these district courts are in the Ninth Circuit and they do not apply the Ninth Circuit's requirement that § 207(i) must be narrowly construed.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|----------|----------------------|------|------------------|
| Title | David Varas v. Directv, LLC | | |

professionals have testified that companies like DirecTV are considered to be retailers. *Jones*, 2013 WL 6072966, at \*9 (citing affidavits from cable industry executives); *Owopetu II*, 2011 WL 4433159, at \*5 (same). Plaintiffs respond by arguing that DirectTV is conflating "establishment" with "enterprise" because DirectTV's retail sales do not occur in "a distinct physical place of business" and that the installation services performed by Plaintiffs' are not "retail." This argument fails because of the reasoning in *Geig* that the relevant inquiry is not whether the particular method is a traditional method of retail, but whether the employer's sales of automobiles should be deemed retail. 407 F.3d at 1047. The Court declines to adopt Plaintiffs' reasoning as it would limit the definition of "retail" to purely physical spaces. DirecTV has met this element.

> ii. *DirecTV Fails To Show That More Than Half of Each Plaintiffs' Compensation Came From Commissions During The Representative Period*

207(i) "exempts employers who employ well-compensated employees earning commissions in 'big ticket' departments from paying overtime," because "selling big ticket items, such as automobiles, "does not lend itself to being compensated on an hourly basis." *Geig v. DDR, Inc.*, 407 F.3d 1038, 1046 (9th Cir. 2005). Consumers in such settings have a relationship with a particular sales employee, and return to deal with that particular sales employee until he completes the sale, at which point the commission is realized. The FLSA relaxes the overtime requirement in such cases so that the particular salesman can accommodate the retail customer's schedule. *See Kelly*, 2010 WL 1541585, at \*8.

The ordinary meaning of "commission" is "a percentage of the money received from a total paid to the agent responsible for the business." Under this meaning, a jury must decide whether fifty percent of Plaintiffs' pay did come from "commissions." The evidence shows that Installers did not receive "a percentage . . . from a total" or even an amount proportional to the fees the subscribers were charged. Plaintiffs were not "responsible for the business." PSUF ¶¶ 1, 7, 11, 63-66). Instead, almost all of Plaintiffs' compensation came in the form of piece-rate pay: a "fixed labor payment" that was not "proportional and correlated" with the revenues DIRECTV subscribers paid, but was derived from the amount of time DIRECTV expected the installation work to take. PSUF ¶¶ 63-65. In fact, DirecTV, in countering the FLSA and California Labor Law claims above, made the same argument about piece-rate claims that it now opposes. The Installers were not responsible for the sale, and more than 95% of the time that a work order could not be completed, it was due to circumstances outside Plaintiffs' control. PSUF ¶¶ 59-60. At the least, there is a genuine dispute of material fact regarding whether the Installer's pay was a commission.

| | | : | |
|--|--|--|--|
| | Initials of Preparer | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

iii. *DirecTV Cannot Prove That Plaintiffs Receive A Regular Pay-Rate Exceeding One And One-Half Times the Minimum Wage.*

As discussed in Section VI.a above, DirecTV miscalculated the Installers' pay rate in its cross-motion for summary judgment and its opposition to Plaintiffs' motion for summary adjudication. DirecTV failed to consider the actual evidence of Plaintiffs' pay and out-of-pocket expenses. Properly calculated, no Installer earned more than 1.5 times the minimum wage: $10.88 per hour. *See supra* Chart 2: Plaintiffs' Correct Calculation of Pay-Rate. The correctly calculated pay-rates range from $4.66 per hour (Varas) to $10.55 per hour (Le). DirecTV fails to meet its burden to prove that Plaintiffs "plainly and unmistakably" fall under the 207(i) exemption.

c. **DirecTV Had the Requisite Knowledge of FLSA Violations**

DirecTV claims that Plaintiffs' FLSA claims fail because DirecTV had no knowledge that Plaintiffs performed work for which they were not properly compensated. To prevail on the FLSA claims, Plaintiffs must show that DirecTV "knew or should have known" that they worked hours for which they were not adequately compensated. *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). Plaintiffs first respond that such notice requirement is particularly inappropriate in cases like this one where DirecTV has not only breached its statutory duty (29 USC § 211, 29 CFR § 516.2) to keep sufficient records, but has deliberately refused to adopt any policy or practice to pay contractor technicians overtime. *See Forrester*, 646 F.2d at 414 ("an employer may [not] escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation"). The Court need not decide whether FLSA imposes a notice requirement in this action because even with the existence of such a requirement, DirecTV was on notice about the compensation issues.

Because an employer has a duty "to inquire into the conditions prevailing in his business," "a court need only inquire whether the circumstances were such that the employer . . . had the opportunity through reasonable diligence to acquire knowledge [of the overtime hours]." *Reich v. Dep't of Conservation & Nat. Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994). The cases DIRECTV cites are in accord. *See e.g. Hertz*, 566 F.3d at 781 (examining what knowledge defendant "should have acquired" through "reasonable diligence").

|  |  | : |
|---|---|---|
|  | Initials of Preparer | |
|  | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

DIRECTV executives were already on notice of contractor technicians not being paid for all their work, including by correspondence from contractor technicians explaining that they were forced to work overtime without pay, and were unable to feed their families. PSUF ¶ 94. DIRECTV received so many of these complaints that senior executive David Baker would remark "[a]nother unpaid contractor I assume." PSUF ¶ 95. Moreover, DIRECTV maintained technicians' schedules in its system and knew that Plaintiffs were regularly scheduled to work more than 40 hours per week. PSUF ¶ 23-31. DIRECTV also had the express ability to direct whether contractor technicians would be scheduled during overtime hours. PSUF ¶ 32, 34-37.

DIRECTV also had the opportunity, through reasonable diligence, to acquire knowledge that contractor technicians were working overtime. DIRECTV required contractors to identify contractor technicians performing work for DIRECTV, to comply with labor laws, and to keep records of these and other obligations under the SPA. PSUF ¶ 18. The SPA further granted DIRECTV the right to inspect and audit these records (PSUF ¶ 18), which DIRECTV could have done, not only because it recognized a legal obligation to do so (PSUF ¶¶ 87-88), but also because it received actual notices of labor law violations from contractor technicians.

There is also evidence that DIRECTV had actual—and certainly constructive—notice that these Plaintiffs specifically were working overtime. Not only did Plaintiffs regularly scheduled hours exceed 40 per week (PSUF ¶¶ 23-31), DIRECTV daily tracked the time DIRECTV expected contractor technicians to be working on specific work orders and to adjust the technicians' schedules accordingly. PSUF ¶¶ 39-31; DSUF ¶ 26. This data did not even include substantial amounts of time (such as drive time) that Plaintiffs were required to work but for which were not assigned a piece rate. *Id*. This data shows DIRECTV expected Plaintiffs to work more than 40 hours in a week, often substantially more. PSUF ¶¶ 42-43.

DirecTV claims that its own data is inaccurate. But in the weeks where DIRECTVs' planned duration data shows Plaintiffs working more than 40 hours, DIRECTV's "actual" duration data for those weeks also shows overtime hours. PSUF ¶¶ 43, 48. The data also shows that Plaintiffs worked as much as 70 hours in a week. PSUF ¶ 48. DIRECTV makes no showing that the "actual" data is so grossly inaccurate that it could not put DIRECTV on notice of the fact that Plaintiffs were working overtime. Importantly, DIRECTV was able to collect this data only because it required Plaintiffs to "status" themselves throughout the day. PSUF ¶¶ 45-47. If DIRECTV did believe contractor technicians were not accurately reporting their time, it had the ability and legal duty to ensure that technicians were

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|----------|----------------------|------|------------------|
| Title | David Varas v. Directv, LLC | | |

properly accounting for their hours. *See Forrester*, 646 F.2d at 414-15 (employer cannot "deliberately turn[] its back on a situation:); *See Reich.*, 28 F.3d at 1082; *Pacific Stucco*, 2006 WL 2432862, at *6 ("an employer has constructive knowledge if he fails to make efforts to enforce company policies in such a way as to prevent FLSA violations"); *Ketchum*, 523 F. Supp. 2d at 1163. At this point, the inaccuracy of the data underscores DIRECTV's constructive knowledge.

DIRECTV also argues that even if it was on notice of overtime hours, it was not on notice of Plaintiffs' pay. But Section 207's plain language creates an affirmative obligation to pay overtime even if a worker does not ask. *See Forrester*, 646 F.2d at 414-15 ("employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation"); *Reich*, 28 F.3d at 1082. DIRECTV was also on notice that contractor technicians were paid on a piece rate basis (PSUF ¶¶ 65, 67), and DIRECTV did not increase the piece rate for work performed during overtime hours. PSUF ¶ 94. Further, had DIRECTV investigated any of the reports that contractor technicians were not being paid appropriately, it might have discovered that Plaintiffs were not being paid overtime. But DirecTV did not investigate and a lack of investigation in the face of a legal duty cannot not immunize DIRECTV from liability. Plaintiffs have met their burden on the notice requirement.

d. **A Two-Year Limitations Period Governs The FLSA Claims**

The statute of limitations for FLSA claims is two years and is extended to three years only if a violation was "willful." 29 U.S.C. § 255(a). Plaintiffs must prove willfulness. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). A violation is "willful" only if the plaintiff shows that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617 (1993). "If an employer acts unreasonably, but not recklessly, in determining its legal obligation," the two-year period applies. *McLaughlin*, 486 U.S. at 135 n.13; *see also Serv. Employees Int'l Union, Local 102 v. Cnty. of San Diego*, 60 F.3d 1346, 1355-56 (9th Cir. 1994).

While the Court considered actual and constructive knowledge in the section above, the analysis about willfulness is different. Here, unreasonable actions by DirecTV or a failure to investigate is not enough to constitute willfulness. The Court can find that DirecTV was aware of FLSA violations but that DirecTV also believed that FLSA did not apply to them. Under such an understanding, DirecTV does have notice of violations but not enough to constitute the willfulness required for a three-year

Initials of Preparer _____ : _____

PMC

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

#### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

limitations period.

The parties disagree about the proper standard for demonstrating "willfulness," with Plaintiffs arguing that mere awareness of the possibility of liability is sufficient. Opp. at 18-19. But the controlling Supreme Court case, *McLaughlin*, expressly rejected a "willfulness" test that would apply if an employer "suspected that his actions might violate the FLSA." 486 U.S. at 135. *McLaughlin* instead enunciated a rule requiring an employee to prove that their employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited." *Id.* at 130-32; *see also Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003). The Court cautioned that it is not enough that the employer was aware that the FLSA was "in the picture." *McLaughlin*, 486 U.S. at 133.

Plaintiffs claim that DirecTV had "actual knowledge" that courts have found cable installers to be employees rather than contractors. But "knowledge of other litigation, many of which have been decided in DirecTV's favor, does not prove willfulness." *Andersen v. DirecTV, Inc.*, 2017 WL 3382158, at *8 (D. Ariz. Jul. 26, 2017). The fact that courts have disagreed shows that DirecTV, at the least, had reason to believe that FLSA might not apply to the Installers in this case. Of course, not all courts also had the same record that this Court considers in finding a joint-employment relationship; however, the fact that other Courts came out differently shows a lack of willfulness on DirecTV's part.

Plaintiffs have not met their burden of proving that DirecTV's violations of FLSA were willful. Plaintiffs argue that DirecTV's legal department communicated routinely with executives about "compliance with federal and state employment law" (PSUF ¶¶ 87, 88) and that executives and attorneys forwarded some newsletters and periodicals discussing employment law judicial decisions. PSUF ¶¶ 92-93. No reasonable juror could infer from these compliance discussions that DirecTV was reckless in concluding that it was not violating the FLSA. *Serv. Employees Int'l Union, Local 102 v. Cnty. of San Diego*, 60 F.3d 1346, 1355-56 (9th Cir. 1994) (consulting with experts to comply with law does not evince willfulness). Such conversations occur frequently at corporate offices and any other finding by this Court would discourage corporations from considering these issues in the first place.

#### e. The Statute of Limitations Did Not Start Running Again in 2016

DirecTV incorrectly claims that the relevant period of this suit is curtailed because the statute of limitations resumed running for several months in 2016, starting when the Court dismissed the prior multi-plaintiff actions and ending when each Plaintiff filed his individual lawsuit. DirecTV argues that

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

when the Court ordered Plaintiffs to re-file their cases as individual actions, the Court intended Plaintiffs to be stripped of their substantive rights. The Court's order stated: "The Court Keeps the dates as previously set." Case No. 2:13-cv-08109, Dkt. 105. Plaintiffs' individual complaints relate back.

Furthermore, there is an action pending in California state court against DirecTV asserting the same California causes of action on behalf of a class of Installers paid on a piece-rate basis. *Giannoulis v. DirecTV, LLC*, (Case No. BC596668).[26] This case has been pending since October 2015—before the Court asked that the instant cases be filed as individual action—and therefore tolled the statute of limitations for all of the claims at issue, both state and federal. *See Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) ("We find no persuasive authority for a rule which would require that the individual suit must be identical in every respect to the class suit for the statute to be tolled."). DirecTV has been on notice of these substantive claims, and the identities of the parties who may participate in any judgment against DirecTV, and DirecTV makes no claim of prejudice in any delay from re-filing. The statute of limitations did not start running again in 2016.

### VII.   Overtime Pay

The parties disagree about the proper method of calculating overtime pay under both FLSA and California law. These damages require the calculation of the "regular rate of pay" and a determination of whether the defendant already has paid "straight time" for all hours. See 29 U.S.C. § 207(a)(1); Cal. Lab. Code § 510(a). The parties disagree on two separate portions of that method: (1) the method of calculating the regular rate of pay and (2) what multiplier a fact-finder should use to determine overtime payment.

#### a.   The Fact-Finder Should Exclude Unpaid Non-Productive Time When Calculating The Regular Rate

FLSA requires employers to pay overtime at a rate of 1.5 times the employee's "regular rate,"

---

[26] DirecTV notes that *Giannoulis* concerns only claims dating back to October 2011; however, this action concerns claims from late 2010. The Court notes that DirecTV was already on notice of the tolling as of the filing of the original federal court action and knew of the late 2010 to October 2011 time period. The only concerns raised in DirecTV's motions regard tolling in between the dismissal of the class action in this instant federal case and Plaintiffs' filing of the individual claims here. *Giannoulis* does cover that time period.

|  |  | : |
|---|---|---|
| | Initials of Preparer | |
| | | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|----------|----------------------|------|------------------|
| Title | David Varas v. Directv, LLC | | |

which is the employee's "rate per hour." 29 C.F.R. § 778.109. The prototypical example of an hourly rate is an hourly worker. He is paid for every hour he works, so his "regular rate" is his hourly rate. This confirms the basic concept that the fact-finder should divide the relevant compensation by the relevant hours worked in order to reach the "regular rate" for other compensation arrangements, such as the piece-rates here.

The parties disagree over what constitutes "hours worked" in this case. Plaintiffs argue that non-productive time (time spent on required activities for which DirecTV pays nothing) should not be included in the calculation. DirecTV argues that both productive and non-productive time should determine the regular rate. In effect, DirecTV's argument would significantly lower the amount of overtime wages each Installer is due.

Because there is no prior agreement expressly providing otherwise, the answer, as a matter of law, is that only productive time influences the calculation of a regular rate here because Installers were not paid for non-productive time.[27] See 29 C.F.R. 778.318(b) ("In the absence of any agreement setting a different rate for nonproductive hours, the employee would be owed compensation at the regular hourly rate set for productive work for all hours up to 40 and at a rate at least one and one-half times that rate for hours in excess of 40."); *Serrano v. Republic Servs.*, Inc., No. 2:14-CV-77, 2017 WL 2531918, at *9 (S.D. Tex. June 12, 2017) (" the regular rate for non-productive time is, by default, the same rate as paid for productive time absent an agreement for a lesser rate"); *Pest v. Bridal Works of New York, Inc.*, No. 16 CV 1523 (CLP), 2017 WL 3393967, at *11 (E.D.N.Y. July 27, 2017) ("[defendant's] method would give defendants the windfall by reducing plaintiff's regular rate of pay and the amount she would be owed in overtime wages"). This is supported by 29 C.F.R. 778.112, which states:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and *dividing by the total hours actually worked*. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

---

[27] For example, the analysis would be different for a salaried worker instead of a piece-rate worker. There might be an agreement where certain non-productive time is covered in a salaried worker's agreement; however, the workers here do piece-rate work, as DirecTV concedes. The arrangement does not contemplate payment for non-productive time.

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|----------|----------------------|------|------------------|
| Title    | David Varas v. Directv, LLC | | |

*Id.* (emphasis added).

In response, DirecTV relies on *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). *Youngerman* held that parties cannot even agree by contract to set compensation rates that artificially suppress the regular rate because doing so could allow the employer to "escape completely the burden of a 50% premium for the hours so worked and prevents the stackers from receiving the benefits of such a premium as Congress intended." *Id.*, 325 U.S. at 426. See also *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017); *Ontiveros*, 231 F. Supp. 3d. at 541–42. Under DIRECTVs theory, employers can undermine the legislative purpose of § 207 simply by refusing to pay for certain activities during the normal work-week. The regulations interpreting § 207 and the purpose of the FLSA allow this Court to find, as a matter of law, that "regular rate" calculations do not include non-productive time for which DirecTV did not actually pay the Installers.

### b. Overtime Damages Are A Question of Fact

As discussed above, a worker must be paid 1.5 times the regular rate for overtime hours. If the employee has already been paid the regular rate for the overtime hours, his damages are only the additional half-time premium for overtime hours. When, however, the employee has not been paid at all for overtime hours, his overtime damages include all unpaid hours under 40 (at the regular rate) and all unpaid overtime hours (at 1.5 times the regular rate). The parties disagree over how many instances exist where DirecTV did not pay Installers for both regular hours and overtime hours; the Court does not have enough information to resolve such a dispute. Therefore, the Court denies summary judgment on this issue. This is a question of fact for the jury.

## VIII.  CONCLUSION

The Court GRANTS Plaintiffs' motion for partial summary judgment on both the FLSA claims and California law claims, finding as a matter of law that DirecTV did employ the Plaintiffs. The Court DENIES DirecTV's motion for partial summary judgment with regard to Plaintiffs Varas, Le, and Nault and GRANTS the same motion with regard to all other Plaintiffs. The Court GRANTS DirecTV's motion for summary judgment on the gap time claims. The Court DENIES DirecTV's motion for summary judgment and finds that DirecTV cannot meet the 207(i) FLSA exemption. The Court

:

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 2016-01395-SVW-AS | Date | November 2, 2017 |
|---|---|---|---|
| Title | David Varas v. Directv, LLC | | |

DENIES DirecTV's motion regarding the FLSA notice requirement, finding that DirecTV did have actual or constructive notice of potential FLSA violations. The Court GRANTS DirecTV's motion, finding the appropriate statute of limitations in this case is two years; however, the state of limitations did not start running again in 2016. The Court GRANTS Plaintiff's motion regarding the calculation of overtimes wages with regard to non-productive time; however, the Court leaves the specific calculation of overtime wages to the fact-finder.

  The matters left for the fact-finder involve the specific calculations and statutory penalties afforded to Plaintiffs under both FLSA and California Law.

                               :

Initials of Preparer

PMC